**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 11, 2014**

# In the Court of Appeals of Georgia

A13A2006. McADOO v. METROPOLITAN ATLANTA DO-101
        REGIONAL TRANSIT AUTHORITY.

A13A2007. METROPOLITAN ATLANTA REGIONAL TRANSIT DO-102
        AUTHORITY v. McADOO.

DOYLE, Presiding Judge.

Phillip R. McAdoo, a bus driver for Metropolitan Atlanta Regional Transit Authority ("MARTA"), filed a worker's compensation claim seeking income and medical benefits for an alleged work-related, gradual-onset back injury. The State Board of Worker's Compensation ("the Board") awarded McAdoo benefits, but the superior court reversed the award, concluding that although the record supported the Board's factual findings with regard to causation, McAdoo failed to give proper notice of his claim to MARTA. In Case No. A13A2006, McAdoo appeals the superior

court's order, arguing that the court erred by reversing the Board's award on the basis that he failed to give MARTA sufficient notice of his injury pursuant to OCGA § 34-9-80. We agree and reverse. In Case No. A13A2007, MARTA appeals, arguing that the trial court erred by affirming the Board's award as to causation and by not correcting the date of McAdoo's injury. We affirm in Case No. A13A2007.

> On appeal, we construe the evidence in the light most favorable to [McAdoo] as the party that prevailed before the Board, and every presumption in favor of the Board's award is indulged. If any evidence supports the Board's findings, those findings are binding and conclusive, and we may not substitute ourselves as a fact finding body in lieu of the Board.[1]

The record shows that McAdoo drove a MARTA bus for more than 22 years. McAdoo suffered from diabetes, which caused him to miss work multiple times each year, and he had standing Family Medical Leave Act ("FMLA") approval for sick leave associated with his diabetes complications. In May 2010, McAdoo began to suffer low back pain and pain in his right hip, buttock, and thigh, which pain worsened as he continued to work. He treated it with over-the-counter pain

---

[1] (Citations and punctuation omitted.) *Putzel Elec. Contractors v. Jones*, 282 Ga. App. 539, 539-540 (639 SE2d 540) (2006).

medications and began to drive by shifting his weight and using his left foot to operate the brakes. His supervisor told McAdoo that it was unsafe to be "switching feet," he needed to "get [himself] taken care of," and he could not drive like that.

McAdoo sought treatment from his primary care physician, who had been treating him for diabetes. The physician referred him to a neurologist for his low back pain. On October 17, 2010, McAdoo stopped working because of the pain, submitting FMLA forms for his absences.

On December 6, 2010, McAdoo's primary physician signed a disability form indicating that McAdoo was disabled due to back or leg pain, although the doctor indicated on the form that the disability was not work-related. In October 2010, McAdoo began treating with Dr. Andrei Serbanescu, a neurologist. In his initial notes, Dr. Serbanescu diagnosed lumbar radiculopathy, but indicated that the symptoms might be "most likely symmetric due to diabetes [versus] radiculopathy and neuropathy. . . . [McAdoo] is unsafe to drive for now." Dr. Serbanescu also signed a disability form, diagnosing a combination of peripheral neuropathy and lumbar radiculopathy with a retroactive disability date of October 17, 2010, and

3

indicating that the disability was not work-related.[2] On December 6, 2010, McAdoo completed a short-term disability claim form for MARTA, listing the cause of his disability as "di[a]betes mellitus; lumbar radiculopathy; peripheral neuropathy; sciatic nerve weakness[;] pain [and] numbness." McAdoo indicated on the form that his disability was related to his employment.

Several months later, on April 18, 2011, a third physician, Dr. Timothy Young, treated McAdoo for his lower back condition and issued a letter indicating that in his medical opinion McAdoo's low back and right leg pain was likely caused by "repetitive and redundant vibrations and injury due to his [job as bus driver]." According to McAdoo, this was the first documentation he received from any of his physicians indicating a direct causal relationship between his job duties and his disability. McAdoo retained counsel, and he filed a worker's compensation claim on April 19, 2011, the day following Dr. Young's letter.

On February 21, 2012, the parties attended a hearing before the administrative law judge ("ALJ"). The parties stipulated at the hearing that McAdoo's last day of

---

[2] Dr. Serbanescu's later records from March 22, 2011, stated that McAdoo's condition "may be the result of his work, [workers'] comp evaluation pending. . . ." There is no evidence, however, that McAdoo was aware of this impression at the time.

4

work was October 17, 2010, but Dr. Young's April 18, 2011 letter would serve as the fictional date of injury, acknowledging that the injury was gradual in onset; McAdoo, however, sought benefits retroactively to October 18, 2010.[3]

Following a hearing, the ALJ awarded McAdoo income and medical benefits. The ALJ found that McAdoo suffered a gradual onset spine injury due to his driving, and the Board's appellate division agreed. The Board's award, however, primarily addressed the notice issue. The appellate division found that McAdoo's notice to MARTA satisfied the requirements of OCGA § 34-9-80 because MARTA had admonished him for improper operation of the brakes and instructed him to resolve his physical impairment. Alternatively, the appellate division found that even if MARTA had not received sufficient notice in October 2010, McAdoo was reasonably excused from giving notice, and MARTA was not prejudiced thereby.

MARTA appealed to the superior court, which accepted the Board's finding that McAdoo's injury arose out of his employment. But the court also concluded that McAdoo left work because of his diabetes, and neither MARTA nor McAdoo could

---

[3] At the hearing, counsel for MARTA explained that the technical limitations of the Board's online electronic filing system precluded McAdoo's counsel from indicating therein that he sought benefits beginning in October 2010 because the fictional date of injury was April 18, 2011. It is undisputed, however, that McAdoo sought benefits retroactively to October 2010, when he stopped working.

5

have presumed any other possible causation. Accordingly, the court found "that . . . McAdoo's notice to MARTA that he was leaving for diabetes-related reasons was insufficient to satisfy OCGA § 34-9-80. Nothing in this notice would trigger any investigation by MARTA, particularly since . . . McAdoo had taken diabetes-related leaves in the past." For that reason, the superior court reversed the ruling of the appellate division.

McAdoo filed an application for discretionary appeal, which this Court granted, and he appeals the superior court's order in Case No. A13A2006. MARTA filed a cross-appeal in Case No. A13A2007, challenging the court's finding that McAdoo's injury was job-related and the court's failure to change the date of the accident to the last day he worked.

*Case No. A13A2006*

1. McAdoo appeals the superior court's order reversing the Board's award, arguing that the Board's findings regarding his notice to MARTA were supported by the record. We agree.

OCGA § 34-9-80 provides that immediately on the occurrence of an accident, or as soon thereafter as practicable, an injured employee should notify his employer. And

6

[n]o compensation will be payable unless such notice, either oral or written, is given within 30 days after the occurrence of an accident . . . *unless* it can be shown that . . . the employer, his agent, representative, or foreman, or the immediate superior of the injured employee had knowledge of the accident, *or* unless a reasonable excuse is made to the satisfaction of the [B]oard for not giving such notice and it is reasonably proved to the satisfaction of the [B]oard that the employer had not been prejudiced thereby.[4]

With regard to the adequacy of notice of the accident required by the statute, the Supreme Court of Georgia has held "that a liberal construction must be given to effectuate the humane purposes for which the [Workers'] Compensation Act was enacted."[5]

OCGA § 34-9-80 does not require that notice of an injury or accident must show that it arose out of and in the course of the employment. The required notice need not be given with a view to claiming compensation, and is sufficient if it puts the employer on notice of the injury so that it may make an investigation if it sees fit to do so. The notice need not be in a particular format, but the employee carries the burden of giving timely notice, which will indicate to the proper statutory recipient thereof that there exists at least a possibility that the injury complained

---

[4] (Emphasis supplied.) OCGA § 34-9-80.

[5] *Schwartz v. Greenbaum*, 236 Ga. 476 (1) (224 SE2d 38) (1976).

7

of may be job-related so that the employer may make an investigation if it sees fit to do so.[6]

In the context of a case of gradual onset injury, "the date of such an injury is the date the employee is required to cease work."[7]

Here, the Board concluded that McAdoo provided MARTA with timely notice because MARTA was aware that he was unable to work because of his inability to use his right leg, recognizing that notice of an injury need not show that the injury arose out of employment, but instead is sufficient if it puts the employer on notice of the injury so that it could make an investigation thereof. The Board further concluded, however, that even if McAdoo failed to give timely notice, his claim was not barred because, as contemplated by OCGA § 34-9-80, he gave a reasonable excuse for not doing so, and he proved that MARTA was not prejudiced thereby.[8]

---

[6] (Citations and punctuation omitted.) *Impress Communications v. Stanley*, 202 Ga. App. 226, 228 (1) (414 SE2d 238) (1991), quoting *Schwartz*, 236 Ga. at 476 (1).

[7] *Impress Communications*, 202 Ga. App. at 229 (1).

[8] Reiterating that McAdoo did not receive an affirmative diagnosis that the radiating pain in his right leg was caused by an injury to his lower back until April 2011, the Board noted that "an employee's caution against filing a possibly frivolous claim should not work to prevent such a claim when the [employer's] knowledge of the empirical evidence surrounding an inability to work is equal to that of an employee."

In reversing the Board's award, the superior court simply concluded that "McAdoo's notice that he was leaving [work] for diabetes-related reasons was insufficient to satisfy OCGA § 34-9-80," and it did not address the Board's conclusion that McAdoo gave a reasonable excuse for not providing timely notice.

In an appeal of workers' compensation award,

> the evidence will be construed most favorable to the party prevailing before the [B]oard, and every reasonable factual inference and presumption of validity of award should be indulged in by the reviewing court. Neither the superior court nor this [C]ourt has any authority to substitute itself as a fact-finding body in lieu of the [B]oard; an appellate body is bound by the "any evidence" standard of review, and is not authorized to substitute its judgment as to weight and credibility of witnesses.[9]

So viewed, the record shows that the superior court erred by reversing the Board's decision regarding McAdoo's notice to MARTA. Pretermitting whether McAdoo's notice to MARTA was sufficient and timely, there was evidence in the record to support the Board's conclusion that McAdoo demonstrated a reasonable excuse for not giving timely notice and that MARTA was not prejudiced thereby. Accordingly,

---

[9] (Citations and punctuation omitted.) Id., quoting *Harper v. L & M Granite Co.*, 197 Ga. App. 159-160 (2) (a) (397 SE2d 739) (1990).

the trial court erred by reversing the Board's award to McAdoo based upon his failure to provide timely notice to MARTA pursuant to OCGA § 34-9-80.[10]

*Case No. A13A2007*

2. MARTA argues that the superior court erred by affirming the Board's decision that McAdoo's injury arose out of his employment because the evidence of such was speculative. We find no basis for reversal.

Dr. Serbanescu specifically stated in an August 2011 letter, which was prepared as an addendum to a prior medical questionnaire regarding McAdoo's medical condition, that "[i]t is [his] impression that . . . [McAdoo's] employment as a bus driver in the last 23 years significantly aggravated, accelerated[,] or at least contributed to his severe lumbar disc disease." Dr. Serbanescu reiterated this opinion at his deposition, explaining that he based his causation opinion upon McAdoo's MRI and EMG nerve conduction study results, the location and pattern of his pain and sensory loss, and the fact that his symptoms worsened when and after he drove a bus.

---

[10] See *Hardware Mut. Cas. Co. v. Sprayberry*, 69 Ga. App. 196, 200 (25 SE2d 74) (1943) ("Inasmuch as it is intended by the act that all questions of fact are for the determination of the . . . Board[,] and its findings are conclusive upon the courts where, as in the case of a jury, there is sufficient evidence to support them, we think that it was intended by the legislature that the reasonableness of the excuse offered for failure to give the specified notice of the accident is for the determination of the . . . Board.").

, Dr. Young stated in his April 2011 letter that McAdoo's chronic lower back pain caused by herniated disc and degenerative disc "was most likely due to repetitive and redundant vibrations and injury due to his occupation as a M[ARTA] [b]us [o]perator."

> The Board is the trier of fact and law and we are bound by its finding if there is "any evidence" to support that finding. . . . Questions as to [credibility] and preponderance address themselves to the trier of facts. On appeal, the appellate tribunal does not determine the credibility of witnesses or the preponderance of the evidence. The appellate tribunal utilizes the "any evidence" test, a test not available to the trier of facts in deciding disputed factual issues. This [C]ourt and the trial court are bound by the findings of the Board supported by any evidence.[11]

Because there was evidence to support the Board's conclusion that McAdoo's injury was job-related, the superior court did not err by affirming this finding.[12]

3. MARTA contends that the superior court erred by failing to reverse the Board's award, which listed the date of injury as April 18, 2011 – the fictional date

---

[11] (Citations and punctuation omitted.) *Hodges v. William L. Sloan, Inc.*, 173 Ga. App. 358, 358-359 (326 SE2d 556) (1985).

[12] See id.; *Travelers Ins. Co. v. Hogue*, 130 Ga. App. 844, 845-846 (204 SE2d 760) (1974).

of McAdoo's injury based on Dr. Young's letter – instead of October 17, 2010, the last day McAdoo worked. According to MARTA, listing the later date would cause MARTA to have to pay temporary total disability benefits for 400 weeks from April 18, 2011 pursuant to OCGA § 34-9-261, instead of 400 weeks beginning on his last day of work.

The ALJ's award, which the Board affirmed, clearly awarded McAdoo "income benefits from the day he ceased working." There is no indication in any other award or order from the ALJ, the Board, or the superior court that McAdoo's benefits would begin on the April 2011 fictional date of his injury. Accordingly, this enumeration presents no basis for reversal.[13]

*Judgment reversed in Case No. A13A2006, and judgment affirmed in Case No. A13A2007. McFadden and Boggs, JJ., concur.*

---

[13] We further note that MARTA's reliance upon cases addressing "fictional 'new accidents'" do not require reversal. "New accident theory cases only apply in those instances where the claimant is injured and goes back to work without any agreement or award as to that injury having been approved or issued by the . . . Board. . . . The date of the 'new accident' is the date that the injury manifested itself, that is, the date the claimant is forced to cease his employment." *Guarantee Mut. Ins. Co. v. Wade Investments*, 232 Ga. App. 328, 329 (499 SE2d 925) (1998) (punctuation omitted). See also *Carey v. Travelers Ins. Co.*, 133 Ga. App. 657, 658 (2) (212 SE2d 13) (1975) (in gradual injury cases, the date of accident is "the date the employee is required to cease work"). Here, it is clear that McAdoo ceased working in October 2010.